IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARCIA HARRIS,

   Plaintiff,

    v.

ORANGE S.A., et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:14-CV-641-TWT

**OPINION AND ORDER**

This lawsuit is the Plaintiff Marcia Harris' second attempt, at least, to recover for the alleged theft of intellectual property from Anoigma Ltd., an English company for which the Plaintiff was a shareholder and director. In a previous lawsuit filed in the Northern District of Illinois, the district court dismissed the Plaintiff's claims on the basis of *forum non conveniens*.[1] The Plaintiff then re-filed her suit in this Court, adding a number of new Defendants including Orange Business Services U.S., Inc. It is before the Court on the Defendant Orange Business Services U.S., Inc.'s Motion

---

[1] See Harris v. France Telecom, S.A., No. 11 CV 357, 2011 WL 3705078, at *6 (N.D. Ill. Aug. 22, 2011).

T:\ORDERS\14\Harris\14cv641\mtdtwt.wpd

to Dismiss [Doc. 8]. For the reasons set forth below, the Motion to Dismiss [Doc. 8] is GRANTED.

## I. Background

Although the Plaintiff's Complaint spans nearly ninety pages – containing a number of redundant and extraneous allegations – the Court will provide only a brief summary of the relevant facts. Anoigma was an English health technology company that focused on portable electronic health records ("EHRs").[2] This case concerns software that Anoigma developed for the storage and display of EHRs.[3] This software allowed people to carry their medical records on portable devices, such as USB drives and cellular phones.[4] The Plaintiff alleges that the Defendants Orange S.A. and Orange Business Services U.S., Inc. ("OBS") were part of a conspiracy – which included the other Defendants – to steal the intellectual property relating to Anoigma's EHR software.[5] According to the Plaintiff, Orange and OBS directed the Defendant Patrice Cristofini to "infiltrate" Anoigma in order to facilitate the theft.[6]

---

[2]     Compl. ¶ 22.

[3]     Id. ¶ 23.

[4]     Id. ¶ 23.

[5]     Id. ¶ 29.

[6]     Id. ¶¶ 29, 38.

On September 5, 2009, Cristofini entered into a service agreement in which he acquired shares in Anoigma, and was named a director of Anoigma, in exchange for his professional services.[7] The Plaintiff alleges, however, that Cristofini then began taking steps to cripple Anoigma financially and push it into bankruptcy.[8] For example, the Plaintiff asserts that Cristofini encouraged the Defendant Barbara Ngouyombo – who was, at the time, the CEO of Anoigma – to withhold financial information from potential investors.[9] Additionally, the Plaintiff alleges that Cristofini had the Plaintiff removed as a director of Anoigma on January 5, 2010.[10]

Eventually, Anoigma was dissolved,[11] and its assets were transferred to CS, a company created to compete with Anoigma.[12] The Plaintiff alleges that Orange, OBS, and Cristofini then pushed CS into liquidation,[13] in which Anoigma's intellectual property was then transferred to Almerys, a subsidiary of Orange.[14] The Plaintiff now

---

[7]   Id. ¶¶ 30, 35.

[8]   Id. ¶ 44.

[9]   Id. ¶ 44.

[10]  Id. ¶ 46.

[11]  Id. ¶ 47.

[12]  Id. ¶ 48.

[13]  Id. ¶ 51.

[14]  Id. ¶ 52.

brings suit against multiple parties, including Orange, OBS, Cristofini, and Ngouyombo. The Plaintiff asserts claims for (1) violation of the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, (2) violation of the Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act, (3) violation of the Georgia Trade Secrets Act ("GTSA"), and (4) fraudulent misrepresentation. The Plaintiff's claims rely on factual allegations that are substantially similar to those from her previous case in the Northern District of Illinois. In that case, however, Orange and OBS were not listed as defendants. OBS now moves to dismiss. In support, OBS argues that: (1) the Plaintiff lacks standing because the real party in interest is Anoigma, not the Plaintiff; (2) the Court ought to dismiss the Plaintiff's claims under the doctrine of *forum non conveniens*; and (3) the Plaintiff has failed to state a plausible claim for relief. In her Response Brief, the Plaintiff did not address standing.

## II. Legal Standard

A plaintiff may survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if the factual allegations in the Complaint give rise to a plausible claim for relief.[15] For a claim to be plausible, the supporting factual matter must establish more than a mere

---

[15] See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").

possibility that the plaintiff is entitled to relief.[16] In determining whether a plaintiff has met this burden, the Court must assume all of the factual allegations in the Complaint to be true. The Court, however, need not accept as true any legal conclusions found in the Complaint.[17]

### III. Discussion

**A. Federal RICO, Georgia RICO, and GTSA**

The Plaintiff lacks standing to assert her RICO and GTSA claims. In federal court, "the party bringing the suit must establish standing to prosecute the action."[18] To satisfy the constitutional standing requirement, the "plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision."[19] Additionally, "[a]part from this minimum

---

[16]   See Iqbal, 556 U.S. at 678.

[17]   See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555 (A "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks omitted).

[18]   Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004), abrogated in part by Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377 (2014).

[19]   Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1386 (2014).

constitutional mandate, [the Supreme] Court has recognized [prudential] limits on the class of persons who may invoke the courts' decisional and remedial powers."[20] The "source of the plaintiff's claim to relief assumes critical importance with respect to the prudential rules of standing . . . the . . . question in such cases is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."[21]

In the context of a federal RICO claim, a "plaintiff has standing . . . only if [her] injury confers RICO standing and [s]he can allege and prove proximate cause."[22] The "relevant provision of RICO provides that '[a]ny person injured in his business or property *by reason of* a violation of [the RICO statute] may sue . . . .'"[23] However, "not all 'factually injured' persons can recover under RICO . . . the plaintiff's injuries must be a *'direct result'* of the alleged racketeering activity."[24] A "party whose injuries result merely from misfortunes visited upon a third person by the defendant's acts

---

[20]  Warth v. Seldin, 422 U.S. 490, 499 (1975).

[21]  Id. at 500.

[22]  Halpin v. Crist, 405 Fed. Appx. 403, 405 (11th Cir. 2010).

[23]  Id. (quoting 18 U.S.C. § 1964(c)) (emphasis added).

[24]  Id. (emphasis added).

lacks standing to pursue a claim under RICO."[25] Additionally, if a party lacks standing to assert a federal RICO claim, she also lacks standing to assert a Georgia RICO claim.[26]

Here, to the extent that there is a plausible RICO claim – under federal or state law – it belongs to Anoigma, not the Plaintiff. The primary injury complained of is that Anoigma was deprived of its intellectual property through a complex scheme executed by the Defendants. The alleged injuries that the Plaintiff personally suffered "result[ed] merely from misfortunes visited upon" Anoigma, and so they do not give her standing to assert a RICO claim. For example, in her Complaint, the Plaintiff alleges that she was harmed because she was a shareholder of Anoigma.[27] However, the Eleventh Circuit has already made clear that "losses suffered by a company's stakeholders as a result of racketeering activity against the company do not give them standing under RICO."[28] Additionally, the Plaintiff also alleges that she was injured

---

[25] Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc., 140 F.3d 898, 906 (11th Cir. 1998) (internal quotation marks omitted).

[26] See Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1294 (11th Cir. 2006) ("[B]ecause the state RICO act is modeled upon and closely analogous to the federal RICO statute, Georgia courts look to federal authority in determining RICO standing.") (internal quotation marks omitted).

[27] Compl. ¶ 116.

[28] Bivens Gardens, 140 F.3d at 906; and cf. United States v. Palmer, 578 F.2d 144, 145-46 (5th Cir. 1978) ("The law is clear that only a corporation and not its

because she was planning on purchasing Anoigma's intellectual property and starting a company in the U.S.[29] The Plaintiff alleges that her business plans were foiled by the Defendants' scheme. But again, this alleged injury "was suffered only as a result of harm to" Anoigma,[30] and so it is "too indirect or 'derivative' to confer RICO standing."[31] Accordingly, the Plaintiff lacks standing to assert her federal and state RICO claims, and so they must be dismissed.[32]

Finally, the Plaintiff also lacks standing to pursue her GTSA claim. Generally, to have standing to assert a trade secret claim, a party must have a legal interest in the trade secret.[33] Here, as OBS points out, the Plaintiff expressly acknowledges that

---

shareholders, not even a sole shareholder, can complain of an injury sustained by, or a wrong done to, the corporation."); Stevens v. Lowder, 643 F.2d 1078, 1080 (5th Cir. 1981) ("[D]iminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right.").

[29] Compl. ¶ 116.

[30] Id. at 908.

[31] Id. at 906.

[32] To be clear, the Plaintiff's allegation that several predicate acts directly involved her is immaterial. The point is that her *injury* was not a direct consequence of the predicate acts or the ultimate goal of the alleged conspiracy.

[33] See Kagan v. Edison Bros. Stores, 907 F.2d 690, 692 (7th Cir. 1990) ("Theft of trade secrets is an injury to the corporation, for which it is the proper plaintiff."); Omnitech Int'l, Inc. v. Clorox Co., 11 F.3d 1316, 1323 (5th Cir. 1994) ("The trial court granted Clorox' Rule 50 motion on Omnitech's trade secrets claim, finding that . . . Omnitech did not own any trade secrets . . . and under the law you

Anoigma owned the intellectual property, not the Plaintiff.[34] Indeed, one of her alleged injuries was that she was unable to obtain rights to the intellectual property because of the Defendants' conduct. Accordingly, the Plaintiff's GTSA claim must be dismissed.

### B. Fraudulent Misrepresentation

The Plaintiff argues that Orange and OBS committed fraud in connection with the Plaintiff's case before the Northern District of Illinois. Specifically, the Plaintiff claims that OBS and Orange helped create "the false impression that France, instead of the U.S., was the location for the key fraudulent acts of the conspiracy, in order to . . . [cause] Harris's U.S. lawsuit of 2011 [to] be dismissed on the basis of *forum non conveniens*," and that "Harris, relying on this fraud, did not appeal the decision in that case."[35] To be clear, the Plaintiff is not claiming that OBS expressly made a false statement. Rather, the Plaintiff is claiming that OBS – which is based in the U.S. – failed to disclose certain facts concerning its involvement with the Defendants located abroad. According to the Plaintiff, had OBS revealed these facts, the Plaintiff could have responded to the Defendants' *forum non conveniens* argument by pointing out

---

must have an interest to enforce a right.").

[34]   Compl. ¶ 59 ("*Anoigma's* IP constituted a trade secret . . . the IP . . . was misappropriated from *Anoigma*.") (emphasis added).

[35]   Compl. ¶ 141.

that a U.S. company was heavily involved in the conspiracy. Under Georgia law, "[f]raud has five essential elements: (1) a false representation or omission of material fact; (2) scienter; (3) an intent to induce the party alleging fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages."[36] However, "[s]uppression of a material fact is fraud *only* if there is a duty to disclose arising from a fiduciary relationship or the particular circumstances of the case."[37] And "the burden is upon the party asserting the existence of such relationship to affirmatively show the same."[38] Here, the Plaintiff has made no argument for why OBS had a duty to disclose certain facts concerning its alleged involvement with the other Defendants. And given that the Plaintiff has failed to describe, with specificity, any affirmative misrepresentation made by OBS, her fraud claim against OBS must be dismissed.

## IV. Conclusion

For these reasons, the Court GRANTS the Defendant Orange Business Services U.S., Inc.'s Motion to Dismiss [Doc. 8].

---

[36] Paul v. Destito, 250 Ga. App. 631, 635 (2001).

[37] Bogle v. Bragg, 248 Ga. App. 632, 636 (2001) (emphasis added).

[38] Infrasource, Inc. v. Hahn Yalena Corp., 272 Ga. App. 703, 705 (2005).

SO ORDERED, this 26 day of November, 2014.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge